UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

KRISTOPHER NELSON,

                         Plaintiff,

                  -against-

THE CITY OF NEW YORK, Correctional Officer HAMILTON, Shield No. 12128, Captain BRATHWAITE, Shield No. 998, Captain JOHNSON, Correctional Officer DEPENA, Shield No. Unknown, Deputy Warden SIMMS, Correctional Officer JOHN and JANE DOE # 1 THROUGH 10, in their individual and official capacities as employees of the City of New York,

                        Defendants.
----------------------------------------------------------- X

**COMPLAINT**
**Jury Trial Demanded**

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution of the United States, the Constitution of the State of New York as well as the common law of the State of New York.

## JURISDICTION AND VENUE

2. This is a civil rights action for money damages brought pursuant to 42 U.S.C. §§§ 1981, 1983, and 1988, and the Fourth and Fourteenth Amendments of the United States Constitution, Article I Sections 6, 11, and 12 of the Constitution of the State of New York, and the common law of the State of New York, against defendants mentioned above and

against the City of New York.   The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a)(b) and (c).

## JURY DEMAND

4.     Plaintiff demands a trial by jury in this action.

## PARTIES

5.     Plaintiff at all times relevant hereto resided in the City and State of New York.

6.     That at all times hereinafter mentioned, and upon information and belief, the defendant City of New York, was at all times relevant hereto, a municipal corporation duly organized and existing pursuant to the laws, statutes and charters of the State of New York.

7.     The New York City Department of Correction was at all times relevant hereto, an agency of the defendant City of New York.

8.     That at all times hereafter mentioned, and on information and belief, defendant Correctional Officer HAMILTON, Shield No. 12128, was at all times relevant hereto, an employee of the defendant City of New

York, employed as a correctional officer by the New York City Department of Correction. He is sued in his individual and official capacities.

9.      Defendant Correction Officer HAMILTON, at all relevant times herein, either directly participated or failed to intervene to stop the assaults upon plaintiff.

10.      That at all times hereafter mentioned, and on information and belief, defendant Captain BRATHWAITE, Shield No. 998, was at all times relevant hereto, an employee of the defendant City of New York, employed as a correctional officer by the New York City Department of Correction. He is sued in his individual and official capacities.

11.      Defendant Captain BRATHWAITE, at all relevant times herein, either directly participated or failed to intervene to stop the assaults upon plaintiff.

12.      That at all times hereafter mentioned, and on information and belief, defendant Captain Johnson, was at all times relevant hereto, an employee of the defendant City of New York, employed as a correctional officer by the New York City Department of Correction. He is sued in his individual and official capacities.

13.      Defendant Captain Johnson, at all relevant times herein, either directly participated or failed to intervene to stop the assaults upon plaintiff.

14.      That at all times hereafter mentioned, and on information and belief, defendant Correctional Officer DEPENA, Shield No. Unknown,

was at all times relevant hereto, an employee of the defendant City of New York, employed as a correctional officer by the New York City Department of Correction. He is sued in his individual and official capacities.

15.     Defendant Correctional Officer DEPENA, at all relevant times herein, either directly participated or failed to intervene to stop the assaults upon plaintiff.

16.     That at all times hereafter mentioned, and on information and belief, defendant Deputy Warden Simms, was at all times relevant hereto, an employee of the defendant City of New York, employed as a correctional officer by the New York City Department of Correction. He is sued in his individual and official capacities.

17.     Defendant Deputy Warden Simms, at all relevant times herein, either directly participated or failed to intervene to stop the assaults upon plaintiff.

18.     That at all times hereinafter mentioned, and on information and belief, the defendant correctional officers JOHN and JANE DOE #1 through 10 were at all times relevant hereto, employees of the defendant City of New York, employed as correctional officers employed by the New York City Department of Corrections. Said defendants are sued in their individual and official capacities.

19.     Defendant correctional officers, JOHN and JANE DOE #1 through 10 at all relevant times herein, either directly participated or failed to intervene to stop the assault upon plaintiff.

20.     At all times mentioned herein, defendant JOHN and JANE DOE #1 through 10 were acting under color of state and local laws, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City of New York and the State of New York.

21.     That at all times hereinafter mentioned, and upon information and belief, the individual defendants are named herein both personally and in their official representative capacities as correctional officers employed by the defendant City of new York through its agency, the New York City Department of Corrections and that each and all of the acts of the individual defendants alleged herein were done by the individual defendants and each of them under cover and pretense of the statutes and laws of the State of New York, and under and by virtue of their authority as officers and employees of defendant, the City of New York.

22.     That as a result of the foregoing, the defendant City of New York, is liable for the individual defendants' acts pursuant to the doctrine of "respondeat superior."

## STATEMENT OF FACTS

**A History of Excessive Force in New York City Jails**

23.     In August of 2014, the United States Attorney's Office issued a shocking report, exposing the DOC for deplorable conditions in New York City Jails, including of course the DOC's culture of excessive use of force by staff against inmates. In fact, for decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous, and unconstitutional use of excessive force by staff at individual facilities in the New York City Department of Correction. *See, e.g., Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) [Correction Institution for Men]; *Jackson v. Montemagno*, CV 85-2384 (AS) (E.D.N.Y.) [Brooklyn House of Detention]; *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) [Bellevue Prison Psychiatric Ward]; *Sheppard v. Phoenix*, 91 Civ. 4148 (RPP) (S.D.N.Y.) [Central Punitive Segregation Unit].

24.     For example, *Sheppard v. Phoenix*, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU). That litigation unearthed abuse of prisoners and cover-ups sufficiently serious to merit criminal prosecution.

25.     *Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action

challenging the pervasive practice of using excessive force against inmates incarcerated in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints from prisoners who had been seriously injured by staff in the City jails. The settlement of this class action was intended to provide meaningful improvements in the training, practice, and supervision of agency staff and investigators, and changes in the Department's use of force policy.

26.     Since 2002, senior supervisors and uniformed staff in the DOC have been sued repeatedly by inmates alleging staff beatings. Many of these cases, all resulting in favorable judgments for plaintiffs following settlement, include remarkably similar allegations of misconduct. See:

• Reynolds v. City of New York, No. 11 Civ. 621 (S.D.N.Y.) (alleging beat-up in George Motchan Detention Center ("GMDC") resulting in shoulder fracture and loss of consciousness; settled for $200,500);

• Mull v. City of New York, No. 08 Civ. 8854 (S.D.N.Y.) (alleging beat-up in AMKC resulting in diffuse axonal injury to brain, partial loss of eyesight, and partial loss of hearing, and requiring the victim to take seizure medications; settled for $550,000);

• Belvett v. City of New York, No. 09 Civ. 8090 (S.D.N.Y.) (alleging beat-ups at GMDC and Robert N. Davoren Center ("RNDC") resulting in facial fracture;  settled for $350,000);

• Youngblood v. Baldwin, No. 08 Civ. 5982 (S.D.N.Y.) (alleging beat-up at GRVC resulting in skull laceration and broken nose; settled for $240,000);

• Williams v. City of New York, No. 07 Civ. 11055 (S.D.N.Y.) (alleging beat-up in Otis Bantum Correctional Center ("OBCC") resulting in fractured jaw and facial bones and torn earlobe; settled for $202,500);

• Williams v. City of New York, No. 09 Civ. 5734 (S.D.N.Y.) (alleging beat-up in RNDC resulting in laceration to head; settled for $87,500);

• Lee v. Perez, No. 09 Civ. 3134 (S.D.N.Y.) (alleging beat-up at North Infirmary Command ("NIC") resulting in multiple rib fractures, a spinal fracture and a collapsed lung; settled for $300,000);

• Shuford v. City of New York, No. 09 Civ. 945 (S.D.N.Y.) (alleging two beat-ups at RNDC resulting in facial fractures; settled for $375,000);

• Diaz v. City of New York, No. 08 Civ. 4391 (S.D.N.Y.) (alleging beat-ups involving two inmates, one at AMKC and one at OBCC; settled for $400,000 and $450,000, respectively);

• Lugo v. City of New York, No. 08 Civ. 2931 (S.D.N.Y.) (alleging beat-up at NIC resulting in orbital fracture; settled for $185,000);

• Cuadrado v. City of New York, No. 07 Civ. 1447 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung; settled for $175,000);

• Scott v. City of New York, No. 07 Civ. 3691 (S.D.N.Y.) (alleging beat-up at GMDC resulting in orbital fracture; settled for $175,000);

• Pischeottola v. City of New York, No. 06 Civ. 2505 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung requiring chest tube; settled for $150,000);

• Rice v. N.Y.C. D.O.C., No. 03 Civ. 582 (S.D.N.Y.) (alleging beat-ups of two inmates at GRVC resulting in collapsed lung and contusion hematomas in one case, and in neck and spinal cord injuries causing permanent stutter in the other; settled for $255,000 and $590,000, respectively);

• Joseph v. N.Y.C. D.O.C., No. 02 Civ. 9219 (S.D.N.Y.) (alleging beat-up at GRVC resulting in orbital fracture; settled for $375,000).

27. Additionally, through DOC's elaborate reporting system, the City of New York was aware of the pattern of a large number of incidents involving the use of unnecessary and/or excessive force by DOC staff members resulting in serious injuries to inmates but failed to take sufficient steps to curb these abuses.

28.     At the time plaintiff was beaten, the City was aware of the unwillingness of the Department to investigate adequately and impose meaningful discipline against DOC staff members who use unnecessary and excessive force on prisoners, or who fail to accurately and honestly report it.

29.     Through all these cases and Department reports, the City has been made aware of the widespread practice by DOC staff members of using excessive and/or unnecessary force to injure, and not restrain, inmates. They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct and of the refusal of the Department to bring effective disciplinary charges against its officers to promote institutional reform and protect the safety of prisoners confined in DOC custody.

30.     The City cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York City jails and the failure of the City to take sufficient measures to investigate and discipline this abuse.

31.     The City has not taken sufficient steps to curb the abuse that occurs on a daily basis in New York City jails. Indeed, it allows that abuse to persist through inadequate investigations of allegations of misconduct and the failure to discipline officers in the face of obvious wrongdoing.

**Assault upon Plaintiff**

32.      Plaintiff is an African-American male.

33.      On or about August 4, 2015, at about 7:50 pm, plaintiff was in the recreation yard at the North Infirmary Command (N.I.C.) on Rikers Island when climbed on the top of a cage in protest having had a number of his personal items destroyed previously by correctional officers.

34.      Captains Johnson and Brathwaite arrived and Johnson threatened to get plaintiff down by force.

35.      Plaintiff asked to be allowed to come down without being harmed.

36.      The defendants insisted that they would harm plaintiff.

37.      A Deputy Warden Simms arrived and ordered additional correction officers to the area.

38.      Ten or more John Doe officers arrived in riot gear and forcibly removed two other inmates from the yard by punching, kicking and spraying them with MK-9 chemical agent.

39.      Plaintiff was told by a number of correctional officers, "We'll fuck you up."

40.      Plaintiff asked again if he could come down on his own without being harmed.

41.     Defendant Hamilton indicated that he and others would inflict "pain" upon plaintiff.

42.     Deputy Warden Simms then ordered the officers to spray plaintiff with the MK-9.

43.     Deputy Warden Simms instructed defendant correctional officers Hamilton and Depena to climb the cage in order to force plaintiff down.

44.     As Hamilton and Depena climbed, other defendants continued to spray plaintiff with MK-9.

45.     John Doe Officers then urged Hamilton and Depena to "push [plaintiff's] ass."

46.     Defendant HAMILTON, with a tremendous amount of force, pushed plaintiff off of the top of the pen while other defendants stood by.

47.     As a result of being pushed from great heights, plaintiff was severely injured.

48.     Yet still, once on the ground, defendant officers kicked plaintiff about the head and body, further injuring plaintiff.

49.     Plaintiff was taken to Intake.

50.     Plaintiff was in obvious pain, had noticeable physical injuries and asked for medical assistance.

51.     Despite plaintiff's obvious pain and clear injuries, defendants denied plaintiff medical assistance for several hours.

52.     When Plaintiff was ultimately seen by a doctor, the doctor questioned officers as to why medical staff was not called in sooner as plaintiff needed to get to a hospital.

53.     Ultimately, plaintiff was transported to Elmhurst Hospital by an ambulance.

54.     Once at Elmhurst, plaintiff was diagnosed with a dislocated shoulder, a fractured wrist among other injuries.

55.     At no time did plaintiff assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal safety of any officer or to the security of the jail so as to warrant such violence.

56.     Plaintiff did not provoke this attack nor did he conduct himself in any manner that would warrant any use of force, much less the excessive force actually used.  Defendant officer acted sadistically and maliciously and demonstrated deliberate indifference toward plaintiff's rights and physical well-being.

57.     All of the above was done in violation of state and federal law.

58.     Defendants employed unnecessary and unreasonable force against the plaintiff. Defendant officers acted maliciously and intentionally, and said acts are examples of gross misconduct.

59.     As a direct and proximate result of the malicious and outrageous conduct of defendants set forth above, Plaintiff suffered injuries including but not limited to emotional trauma, harm and distress, mental anguish and serious physical injuries.

60.     Plaintiff continues to suffer substantial pain due to the injuries he sustained.

61.     The conduct of the defendant correctional officers in assaulting the plaintiff and denying him medical attention directly and proximately caused serious physical and emotional injury, pain and suffering, mental anguish, humiliation and embarrassment.

62.     The events described herein have left permanent emotional scars that plaintiff will carry with him for the remainder of his life.


**COUNT ONE**
**Assault and Battery**
**Against Individual Defendant Officers**

63.      Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

64.     The Defendants officers intentionally touched Plaintiff and caused him serious physical injury.

14

65.     The Defendants' touching of Plaintiff was harmful and offensive and occurred without legal justification, excuse, or privilege.

66.     Plaintiff did not consent to physical contact by any of the Defendants.

## COUNT TWO
### 42 U.S.C. § 1983
### Excessive Use of Force Under Fourth Amendment
### Against Individual Defendant Officers

67.     The plaintiff incorporates by reference the factual allegations set forth above as if fully set forth herein.

68.     Plaintiff repeats and realleges each and every allegation above  as if  fully set forth herein.

69.     The Defendants intentionally touched  Plaintiff.

70.     The Defendants' touching of Plaintiff involved the use of excessive physical force and caused and/ or exacerbated serious injuries to Plaintiff.

71.     Plaintiff did not consent to the excessive physical contact by any of the Defendants, and they lacked legal justification, excuse, or privilege for their conduct.

72.     By virtue of the foregoing, the Defendants each deprived Plaintiff of his right under the Fourth Amendment to  the  United  States Constitution  to  be  free from the excessive use of force.

73.     The Defendants each deprived Plaintiff of his rights intentionally, willfully, or recklessly, under color of law.

74.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein alleged.

## COUNT THREE
### Substantive Due Process
### 42 U.S.C. § 1983 (Against All Defendants)

75.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

76.     The Defendants each maliciously and sadistically abused their government power in their actions toward Plaintiff.

77.     These actions were of a kind likely to, and which in fact did, produce substantial injury to Plaintiff.

78.     The Defendants treated Plaintiff in a manner that shocks the conscience.

79.     The Defendants thus violated Plaintiff's right to substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution.

80.     The Defendants each deprived Plaintiff of his rights intentionally, willfully, or recklessly, under color of law.

81.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein alleged.

## COUNT FOUR
### Respondeat Superior Liability
### Against the City of New York

82.     Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

83.     The aforementioned conduct of the defendants occurred while they were on duty and was within the scope of their authority as officers.

84.     Thus, Defendant City of New York is liable to Plaintiff for his damages under the doctrine of respondeat superior.


**COUNT FIVE**
**42 U.S.C. § 1983/Fourteenth Amendment/Monell**
**(Against Defendant City)**

85.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

86.     Defendant City, through the DOC and officers to whom policymaking authority was delegated, and acting under the pretense and color of law, permitted, tolerated and was deliberately indifferent to a pattern and practice of staff brutality and retaliation by DOC staff at the time of plaintiff's beatings. This widespread tolerance of correction officer abuse of prisoners constituted a municipal policy, practice, or custom and led to plaintiff's repeated assaults.

87.     By permitting, tolerating, and sanctioning a persistent and widespread policy, practice, and custom pursuant to which plaintiff was subjected to brutal beatings and untimely medical care, defendant City has deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Fourteenth Amendment to be free from gratuitous and excessive force.

87.     Defendant City had a policy, custom, or practice of failing to train and/or supervise the individually named defendants and other City employees on how to timely and adequately care for and treat inmates who had psychiatriac issues or were suicidal or severely depressed.

88.     Defendant City had a policy, custom, or practice of treat inmates who had psychiatriac issues or were suicidal or severely depressed the same as inmates who did not have these issues.

89.      These failures led directly to the violation of plaintiff's rights.  These failures led directly to the incidents that followed that led to plaintiff being injured.

90.     The City's failure to implement policies and practices and failure to train and supervise its employees resulted in the individual defendants and other City employees not treating and not properly obtaining timely care for plaintiff's psychiatric issues, depression and/or suicidal ideations.

91.     These failures led directly to the violation of plaintiff's rights.

92.     These failures led directly to the incidents that followed that led to plaintiff being injured.

93.     As a direct and proximate result of the policy, practice, and custom detailed above, plaintiff sustained the damages hereinbefore alleged.

### COUNT SIX
### Failure To Intervene
### Against All Individual Defendants

94.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

95.     The defendants were present but failed to intervene in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

96.     Accordingly, the defendants who failed to intervene violated Plaintiff's Fourth, Fifth And Fourteenth Amendments.

97.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**COUNT SEVEN**
**Negligent hiring/Training/**
**Retention of Employment Services**
**Against Defendant City**

98.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

99.     Defendant City, through the Department of Correction, owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

100.    Upon information and belief, all of the Individual Defendants were unfit and incompetent for their positions.  Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that the Individual Defendants were potentially dangerous.

101.    Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiff's injuries.

102.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**COUNT EIGHT**
**Deliberate Indifference to Medical Needs**
**As to all defendants**

103.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

104.    The individual defendants were aware of plaintiff's need for medical care and failed to act in deliberate indifference to plaintiff's needs.

105.    Accordingly, defendants violated the Fourth, Fifth and Fourteenth Amendments because they acted with deliberate indifference to plaintiff's medical needs.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.


DATED:      June 23, 2016
            Brooklyn, New York

_____
Amy Rameau, Esq.

The Rameau Law Firm
16 Court Street, Suite 2504
Brooklyn, NY 11241
718.852.4759
rameaulawny@gmail.com

*Attorney for plaintiff*